815 So.2d 208 (2002)
STATE of Louisiana,
v.
Joseph FLAGG.
No. 01-KA-965.
Court of Appeal of Louisiana, Fifth Circuit.
March 26, 2002.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, State of Louisiana, Terry M. BoudreauxAppellate Counsel, Alison WallisCounsel of Record on Appeal, Louis ButlerTrial Counsel, Assistant District Attorneys, Gretna, LA, for Appellant State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CANNELLA, Judge.
The State of Louisiana appeals the enhanced sentence imposed on the Defendant, Joseph Flagg, after a habitual offender proceeding. We vacate the sentence and remand for re-sentencing.
The Defendant, Joseph Flagg, pled guilty on July 17, 2001 to possession with the intent to distribute cocaine, a violation of La.R.S. 40:967 A. The incident leading to his guilty plea occurred on September 13, 2000. Pursuant to the plea agreement, he was sentenced to 20 years imprisonment at hard labor, concurrent with any other sentence that he was serving. The State subsequently filed a habitual offender bill of information, alleging that the Defendant was a fourth-felony offender. La.R.S. 15:529.1 A(1).
At the hearing in the habitual offender proceeding conducted on July 17, 2001, the State offered evidence of three prior felony offenses, all for possession of cocaine, violations of La.R.S. 40:967 C(2). Each violation has a maximum sentence of five years at hard labor, with a possible fine of $5,000. The prior convictions were obtained on June 21, 1999, April 12, 1995, and June 14, 1994.
The Defendant waived his right to object, admitted to the three prior offenses and to his identity with regard to those offenses. After the trial court advised the *209 Defendant of a sentencing range of 20 to 60 years, the State objected, arguing that the Defendant should be subject to life imprisonment, because the penalty provision as it existed under the habitual offender statute at the time of the commission of this offense controlled. La.R.S. 15:529.1 A(1)(c)(ii). The trial judge disagreed, finding that, under the law as enacted in 2001 prior to the habitual offender hearing, the Defendant was not subject to life imprisonment. He then vacated the Defendant's initial sentence and sentenced him to serve 20 years at hard labor, concurrent with other sentences that the Defendant was serving.
On appeal, the State asserts that the trial judge erred in failing to impose the mandatory sentence of life imprisonment at hard labor pursuant to the law in effect at the time of the commission of the underlying offense.[1]
The trial judge gave the following reasons for ordering the reduced sentence:
THE COURT:
Thank you. It is the finding of this Court that while it is true that I must sentence Mr. Flagg in accordance with the statute containing the penalty for the violation of the criminal conduct that was in effect at the time of the offense, specifically R.S. 40:967(a), that the enhancement proceeding, the multiple bill proceeding, if you will, that we're going through now is governed by, in my judgment, the provisions of the current Act. And the current Act clearly indicates prospective application only. I do not believe that the case law that you referenced makes reference to the enhancement article, I should say Title 15, but references only the penalty provisions as contained within the Act that proscribes the conduct for which he has pled guilty.
And for those reasons your argument is rejected and this court will grant the multiple bill, all right, but the sentence, the previous sentence is vacated of 20 years and this Court imposes 20 years as your sentence at hard labor with the Department of Corrections, which will run concurrently with any sentence you may be currently serving. And if you're entitled to credit for time served, so be it.
(R., pp. 58-59).
At the time of the commission of the offense, September 13, 2000, possession with the intent to distribute cocaine in the amount possessed by the Defendant carried a penalty of imprisonment at hard labor for not less than five nor more than thirty years, with the first five years of the sentence to be served without benefit of parole, probation, or suspension of sentence and a possible fine of not more than $50,000.00. La.R.S. 40:967 B(4)(b). At that time, La.R.S. 15:529.1(A)(1)(c)(ii) provided for the imposition of a life sentence without benefit of parole, probation, or suspension of sentence:
If the fourth or subsequent felony or any of the prior felonies is a felony ... is a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years ...
In this case, the Defendant's underlying offense was punishable by more than five years. Therefore, under the habitual offender statute as it existed at the time of the commission of this offense (September 13, 2000), he was subject to life imprisonment *210 at hard labor without benefit of parole, probation, or suspension of sentence.
The Louisiana Legislature enacted Act 403, which became effective on June 15, 2001. Section 7, 2001 La. Acts 403. It amended the penalty provisions of numerous statutes, including the substantive drug offense involved in this case, La.R.S. 40:967 B(4)(b), the penalty provisions under the habitual offender statute for fourth-felony offenses meeting the requirements of La.R.S. 15:529.1 A(1)(c)(ii), and the article that prohibited suspension of sentence for certain drug offenses, La. C.Cr.P. art. 893 A. Sections 2, 4, 5, 2001 La. Acts 403. In Section 6, the Act specified that the provisions "shall only have prospective effect."
Under the amended version of R.S. 40:967 B(4)(b), the sentencing range for a violation of possession with the intent to distribute cocaine was reduced from not less than five nor more than 30 years, with the first five years to be served without benefit of parole, probation, or suspension of sentence, to imprisonment at hard labor for not less than two and not more than 30 years, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence.
The amended provision of the habitual offender statute for fourth felony drug offenders now provides for the imposition of a life sentence only if the fourth felony and at least two of the three prior felonies are violations of the Uniform Controlled Dangerous Substances Law and if they are punishable by imprisonment of ten years or more. Previously, a life sentence was mandated if the fourth or any of the prior felonies were punishable by imprisonment of more than five years. La.R.S. 15:529.1 A(1)(c)(ii), as amended by Section 2, 2001 La. Acts 403.
In the present case, the penalty for the three prior drug offenses is imprisonment of "not more than five years." La.R.S. 40:967 C(2). Therefore, if Act 403 of 2001 is applicable to this case, the trial judge correctly sentenced him because the Defendant would not be subject to mandatory life imprisonment. He would be exposed to a sentence between 20 years and life. La.R.S. 15:529.1 A(1)(c)(i).
We addressed the issue of the applicability of Act 403 of 2001 in two recent cases. In both cases, it became effective after the commission of the offense, but before the sentence was imposed.
The first case, State v. Jordan, 01-KH-1034 (La.App. 5th Cir 10/12/01), arose from a writ application in which relief was sought prior to sentencing. Jordon had been convicted of theft of goods in excess of $500.00, a violation of La. R.S. 14:67.10. He was later found to be a fourth-felony offender and sentenced as a habitual offender under La.R.S. 15:529.1 A(c) prior to its amendment. In Jordon, we stated:
Second, considering whether the new law or the law in effect at the time of the offense should apply to the habitual offender proceedings, we again find no error in the trial court determination that the law prior to its amendment should apply. While this issue presents a closer question, and some states have held that the new law would apply under similar circumstances, that has not heretofore been the holding in this state. The leading case on this point is State v. Clark, 391 So.2d 1174 (La.1980), which held that the law in effect at the time the offense is committed is applicable. That holding has not been overturned. See also: State v. Jones, 99-2207 (La.1/30/01), 778 So.2d 1131; State v. Bosworth, 415 So.2d 912 (La.1981). We find it controlling in this case.
Additionally, we note that the Court in Clark went on to find that the sentencing *211 court should consider the current legislative intent in determining whether the sentence under the statute as it existed prior to its amendment is excessive, and to sentence the Defendant lawfully.
The second case, State v. Sugasti, 01-770 (La.App. 5th Cir.11/27/01), 802 So.2d 943, was an appeal by the State.[2] Sugasti was convicted of possession of heroin, first offense, and was given a suspended sentence after the trial judge applied the amended and reduced penalty in Act 403 of 2001. We vacated the sentence and remanded the matter to the trial court, following the general rule that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Wright, 384 So.2d 399, 401 (La. 1980).[3] Pursuant to State v. Clark, 391 So.2d 1174, 1176 (La.1980), we recognized that the ameliorative change in the law is a factor to be weighed by the sentencing judge, but clarified that it can only be a consideration "within the limits fixed by law at the time of the commission of the crime," quoting State v. Jones, 99-2207 (La.App.1/29/01), 778 So.2d 1131, 1134. Since a suspended sentence was not available in the prior penalty, we concluded that the trial judge erred in suspending the sentence "in derogation of the sentencing provisions applicable at the time of the offense."[4]
Based on our prior dispositions of this issue with which we agree, we find that the trial judge erred in giving Act 403 of 2001 retroactive application in sentencing this Defendant to 20 years at hard labor as a fourth-felony drug offender. For the reasons stated, the Defendant's sentence is illegally lenient.
Although this Court would normally have the authority to correct an illegal sentence under La.C.Cr.P. art. 882, since the State properly raised the issue, the sentence resulted from a plea bargain in which the trial judge agreed to give the Defendant 20 years at hard labor on the habitual offender bill of information. Because 20 years was part of the plea agreement, but is illegally lenient, the sentence must be vacated and the case remanded to the trial court for further proceedings, with the reservation of the Defendant's right to withdraw his guilty plea. State v. Guilbeaux, 99-591 (La.App. 5th Cir.11/10/99), 749 So.2d 16, 18-19.
We note that the trial judge may consider the legislative change in the penalty as evidence of its intent. Clark, 391 So.2d at 1176. And, although the life sentence is mandatory in this case, the trial judge is permitted to deviate from the mandatory sentence imposed by La.R.S. 15:529.1 if he finds, and articulates in the record, that the mandated punishment is unconstitutionally excessive. State v. Dorthey, 623 *212 So.2d 1276 (La.1993).[5]
Accordingly, the enhanced sentence is hereby vacated. The case is remanded for re-sentencing in accordance with this opinion.
SENTENCE VACATED; CASE REMANDED.
DALEY, J., dissents with reasons.
DALEY, J., Dissenting:
I respectfully dissent from the majority opinion. I would affirm the sentence of twenty years based on the application of the current version of La. R.S. 15:529.1(A)(1)(c)(ii). The majority opinion applying the old law vacates the defendants' 20 year sentence finding that a life sentence is the minimum mandatory sentence unless the trial court finds that the imposition of a life sentence is constitutionally excessive relying on State v. Clark, 391 So.2d 1174 (La.1980). Clark supra at p. 1176 states:
Where there has been an ameliorative change in the penalty provision of a statute that takes effect after the date of the offense, but before trial or final judgment, it is the rule in this state that the penalty provision in effect at the time of the offense is the applicable provision. State v. Dreaux, 205 La. 387, 17 So.2d 559 (1944). See also State v. Wright, supra; State v. Paciera, 290 So.2d 681, 687-88 (La.1974). However, as pointed out in Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859, 874 (1976) (Opinion of Justices Stewart, Powell and Stevens) "an assessment of contemporary values concerning the infliction of a challenged sanction is relevant to the application" of the Eighth Amendment's ban against cruel and unusual punishment. It is no less relevant to the inquiry of whether a particular penalty is excessive. And it has been acknowledged that legislative enactments provide an important means of ascertaining contemporary values. Id. at n. 19. Inherent in mitigatory changes in penalty provisions of an offense is a legislative determination that the present law is inappropriate, Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation: 121 U.Pa. L.Rev. 120, 138 (1972), and that the lesser penalty is sufficient to meet the legitimate ends of the criminal law. In re Estrada, 63 Cal.2d 740, 408 P.2d 948, 952, 48 Cal.Rptr. 172 (1965); People v. Oliver, 1 N.Y.2d 152, 134 N.E.2d 197, 201-02, 151 N.Y.S.2d 367, 373-74 (1956).
Because sentencing in this case would be more lenient under the revised version of La. R.S. 15:529.1 a constitutional review for excessiveness may be warranted. However, I do not find it necessary because La. R.S. 15:529.1(A)(1)(c) as amended applies in this case.
In applying the habitual offender law courts have held that the severity of habitual offender law requires that it be strictly construed. State ex rel. Jackson v. Henderson, 283 So.2d 210 (La.1973). Also, with regard to the habitual offender proceeding courts have clearly determined that a multiple offender proceeding does not charge a new crime, but is merely a method of increasing the punishment of subsequent offenses. State v. Davis, 01-123 (La.App. 5th Cir.7/30/01), 792 So.2d 126. The language of La. R.S. 15:529.1(A)(1)(c)(ii) requires the sentencing Judge to determine at the time of the habitual offender proceeding whether the *213 previous felonies are currently classified as a crime of violence under R.S. 14:2(13), or a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen, or a violation of the drug laws punishable by ten years or more, or any other crime punishable by imprisonment for twelve years or more.
In this case the State filed a habitual offender bill alleging that the defendant was a fourth felony offender. At the hearing in the habitual offender proceeding conducted on July 17, 2002, the State offered evidence of three prior felony offenses, all for possession of cocaine, violations of La. R.S. 40:967(c)(2). Each prior offense subjected the defendant to a maximum sentence of five years at hard labor with a possible fine of $5,000.00. The prior convictions were obtained on June 21, 1999, April 19, 1995, and June 14, 1994. There is no factual dispute that the defendant is a fourth felony offender.
La. R.S. 15:529.1(A)(1) was amended by Act 403 of the 2001 Regular Session of the Louisiana Legislature. The portion of the statute that deals with fourth offenders, which was in effect at the time of defendant's habitual offender proceeding, reads:
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for the first conviction but in no event less than twenty years and not more than his natural life; or
(ii) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14.2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
This version of La. R.S. 15:529.1 became effective on June 15, 2001, changing the applicable penalty for some habitual offenders. Prior to June 15, 2001, and at the time that the defendant in this case committed his fourth offense, the applicable enhancement provision of La. R.S. 15:529.1(A)(1) read:
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
(ii) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
*214 Under the habitual offender statute as it existed at the time of the commission of this offense (September 13, 2000) defendant was subject to a minimum sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Under the old law a life sentence was mandated if the fourth or any of the prior felonies were drug offenses punishable by imprisonment of more than five years. Under the new law, since the penalty of the three prior drug offenses is imprisonment of not more than five years, the defendant would be exposed to a sentence of 20 years to life. Defendant argues that the new legislative enactment requires the sentencing judge to look at the applicable sentence for the underlying felony at the time of the habitual offender enhancement proceeding and to determine what the applicable habitual offender's enhanced sentence should be.
Whether to apply the old law or the new law is determined based on statutory construction. The general rule is that the applicable enhancement statute is the one existing at the time of the commission of the offense for which the sentence is to be enhanced.[6] The language of the new law requires the sentencing Judge at the habitual offender proceeding to consider the sentencing ranges of the underlying felonies at the time of the habitual offender proceeding. The Article reads'"If the fourth felony and two of the prior felonies are ..." certain enumerated crimes with certain sentencing ranges then enhancements are applicable. The use of the present tense verb "are" requires a review of the present sentencing ranges of the underlying felony offenses. The statutory language requires a review of the sentences and classification of those enumerated felonies in the present. The law doesn't say if the felonies "were" certain enumerated felonies. The statute uses the present tense. The use of the present tense verb "are", is evidence of legislative intent to have the enhancement penalties imposed based on the penalty provisions applicable at the time of the enhancement proceeding.
The Louisiana Supreme Court has in the past addressed how legislative amendments affect the habitual offender statute. In State v. Dreaux, 205 La. 387, 17 So.2d 559 (1944), the Supreme Court held that the defendant became a second offender on the date that he committed the criminal act, which constituted the second felony and was subject to the punishment provided for by the law as it existed on that date. The Supreme Court acknowledged that the defendant argued that the legislature had amended the habitual offender statute reducing the applicable penalties or range of penalties for second offenders. The defendant argued that he should receive the benefit of the new statute especially since it was in effect at the time he was sentenced. The Supreme Court rejected this position and suggested that questions of policy and equity with regard to sentences are matters that address themselves to the Board of Pardons, and not for the court. Dreaux, however is clearly distinguishable because of the language of the amendment which was being applied. The amendment in that case provided: "This Code shall not apply to any crimes committed before it becomes effective. Crimes committed before that time shall be governed by the law existing at the time the crime was committed." In contrast, Act 403 of the 2001 Legislative Session (the new law) stated that the provisions of the act shall have "prospective effect" suggesting that the amendments should apply to habitual sentencing *215 proceedings, which occur after the amendment's effective date.
In State v. Sawyer, 350 So.2d 611 (La. 1977), the defendant objected to the use of two prior offenses for enhancement as a habitual offender arguing that the two prior offenses were felonies at the time he was convicted, but the legislature had subsequently reduced those crimes to misdemeanors. Thus, he argued that the prior felony convictions, which at the time of the habitual offender proceedings were now characterized as misdemeanors, could not be used against him as underlying felony predicates. The Supreme Court rejected the position finding that the status of the offense was determined at the time of conviction. Justice Calogero and Justice Dixon dissented on that issue. The Sawyer case is likewise distinguishable because defendant was arguing that his prior felony conviction should no longer be classified as a felony. Defendant, Mr. Flagg, does not attempt to change the classification of his prior offenses, rather, he points to the fact that the sentencing parameter of the underlying felonies must now be considered at the time of the habitual offender proceeding.
In Act 403 of the 2001 Legislative Session the legislature addressed the social problem of Louisiana's prison overcrowding and decided that certain crimes, which were previously eligible for life sentencing enhancement, no longer warranted life sentence enhancement status. Imposing the harsher penalty after the amendment would serve no valid penological purpose, particularly in the instant case in which the legislature has made a policy determination that the harsher sentences are no longer appropriate for the offenses. Given the comprehensive nature of the revisions enacted to alleviate the enormous prison overcrowding problems that have developed due to the past 30 years of increasing penalties, which potentially impacts hundreds of offenders, the argument for immediate application of the statutory amendment is compelling.
Based on these reasons, I conclude that the trial judge in this case correctly applied the law in effect at the time of the enhancement proceeding when the defendant was sentenced to twenty years.
I would affirm the conviction and sentence.
NOTES
[1] The State may appeal a sentence imposed which is not in conformity with mandatory statutory requirements. La.C.Cr.P. art. 881.2 B(1)(a). State v. Sugasti, 01-770, p. 4 (La. App. 5th Cir.11/27/01), 802 So.2d 943.
[2] Writs were applied for and granted in the Louisiana Supreme Court. The results are pending.
[3] In supervisory writs to this Court, we have recently applied Act 1163 of 2001 prospectively from the date of the offense in cases involving the reduction in penalties for DWI offenses. See State v. Hung Vu, 01-K-1228 (La.App. 5th Cir.11/2/01); State v. Porte, 01-KH-1191 (La.App. 5th Cir.11/16/01); State v. Fleming, 01-K01332 (La.App. 5th Cir.1/9/02). Act 1163 of 2001, which went into effect the same date as Act 403 of 2001, reduced penalties in certain DWI cases.
[4] The State notes that three writ dispositions by the Louisiana Fourth Circuit Court of Appeal have also followed the same rationale in applying Act 403 of 2001. State v. Legendre, 01-K-1483 (La.App. 4th Cir.10/3/01); State v. Carter, 01-K-1560 (La.App. 4th Cir.10/3/01); State v. Serpas, 01-K-1477 (La.App. 4th Cir.10/3/01).
[5] We reviewed the record for patent errors, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 206 and find no patent errors requiring action by this Court.
[6] State v. Chisolm, 99-1055 (La.App. 4 Cir. 9/27/00), 771 So.2d 205, writ denied 2000-2965 (La.9/28/01), 798 So.2d 106, writ denied, XXXX-XXXX (La.9/28/01), 798 So.2d 108