848 So.2d 149 (2003)
STATE of Louisiana
v.
Harry J. DUPRE.
No. 03-KA-256.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 2003.
*150 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The defendant was found guilty of eight counts of first degree robbery in violation of R.S. 14:64.1. After being adjudicated a multiple offender, he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He has appealed his sentence as being excessive. For the reasons that follow, we affirm.

FACTS:
Eighty-two-year-old Joseph Smith (Smith) testified that, on April 10, 2001, he was working at the McKenzie's Bakery at West Esplanade and Transcontinental when he was the victim of a robbery. Smith testified that, shortly after 10:00 a.m., a man walked into the store and picked up a package of cinnamon rolls and a drink and placed it on the counter. The man then demanded all the money in the register, brandished a silver gun, and instructed Smith not to pull the alarm. The man subsequently began taking money out of the register and putting it into a bag. After taking the money, the man ordered Smith to lie down on the floor. The robber then exited with approximately $150.00, the cinnamon rolls, and a Coke. Smith then called 911. Smith testified that he could not positively identify defendant *151 as being the individual who robbed him.
Alma Nuss (Nuss) testified that, on April 11, 2001, she was working at McKenzie's Bakery located near Power Boulevard and David Drive when she was the victim of a robbery at approximately 10:00 a.m. Nuss testified that a man walked into the store, picked up a Coke, and walked to the register. Nuss then scanned the Coke and asked the man if there would be anything else, at which point the man asked for all the money in the register. Nuss panicked and the man became agitated, threatening to "blow her away" if she didn't give him the money. The man then pulled up his shirt and pulled out a silver or chrome-colored gun. At that point, a female customer walked into the store. The man told Nuss not to say a word or he would "blow her away". The customer picked up a package of cinnamon rolls and went to the counter and placed the cinnamon rolls and her purse on the counter, at which time her cellular phone began to ring. Upon hearing the phone ringing, the robber immediately left the store. Nuss explained to the customer what had happened and the customer called 911. The robber did not take anything from the cash register, but did take the Coke without paying. A surveillance camera captured the events on videotape and that tape was played for the jury. Nuss additionally testified that she was not able to identify the person who robbed her in a photographic lineup, nor was she able to make an in-court identification of defendant.
Judy Aguirre (Aguirre) testified that, on April 11, 2001, at approximately 6:30 p.m., she was working at the 7032 Veterans location of McKenzie's Bakery when a man walked into the store and demanded all the money in the register. The man told Aguirre that he had a gun under his jacket. Although Aguirre did not see the gun, she testified that she did feel threatened. Aguirre then gave the defendant the money in the cash register. After taking the money, the defendant ordered her to lie on the floor. At trial, Aguirre was able to make a positive in-court identification of defendant as being the perpetrator of the robbery.
Leonta Barrow (Barrow) testified that she was employed at the E-Z Serve located at 2100 Cleary on April 12, 2001. On that date, a man walked into the store and asked for a pack of cigarettes and all the money in the cash register. He then lifted his shirt exposing a the handle of a gun. Barrow testified that the man stole approximately $35.00. After the man left the store, Barrow called the police. Barrow testified that she was shown a photographic lineup three days after the robbery in which she identified defendant as being the perpetrator. At trial, she made a positive in-court identification of defendant as being the man who had robbed her. Additionally, a videotape of the incident was shown to the jury.
Dawn Reno (Reno) testified that she was employed at McKenzie's Bakery located on Jefferson Highway on April 12, 2001 when she was the victim of a robbery perpetrated by defendant. Defendant walked into the store, picked up a Barq's French Vanilla Crème Soda, and walked up to the counter. Defendant then demanded the money from the register and pulled up his shirt revealing a gun. Reno testified that she gave defendant the money and he left the store. Thereafter, Reno called the police. As a result of video surveillance, a videotape of the incident was recorded and played for the jury. Reno further testified that she was shown a photographic lineup after the robbery and was able to identify defendant as being the individual who robbed her.
*152 Laurelle Banta (Banta) testified that she was working at Merita Bread store on April 13, 2001 when she was the victim of a robbery at approximately 11:00 in the morning. Banta testified that a man walked into the store and shopped around while other customers were in the store. When the customers left, the man walked up to the counter and Banta checked his items. At that point, the man raised a gun and demanded the cash out of the register. Banta gave the man the money. Banta testified that she was able to get a good look at the defendant because he was in the store for approximately 15 to 20 minutes. She explained that she looked straight into his eyes. As a result, she was able to identify defendant as the perpetrator of the robbery through a photographic lineup and additionally made a positive identification in open court. She also identified the clothes worn by the defendant during the robbery.
Mamie Hunt (Hunt) testified that she was working at a Texaco Station on Airline Highway on April 14, 2001 when she was the victim of a robbery. Hunt testified that a man walked into the store, picked up a Sprite, and put it on the counter. She testified that when she rang up the Sprite, the cash register drawer opened and the man demanded all the money in the register. Hunt placed money from the register into a bag which was taken by the man as he fled the store. Hunt testified that when the man asked for the money, he raised his shirt revealing the handle of a gun in the waistband of his pants. She testified that she got a good look at the robber and identified the clothes worn by the robber in court. Hunt made a positive in-court identification of the defendant, although she admitted that shortly after the robbery she was unable to positively identify the defendant from a photographic lineup.
Dennis Hebert (Hebert) testified that, on April 14, 2001, he was employed at an E-Z Serve convenience store located at 2525 West Metairie when he was the victim of a robbery. Hebert testified that a man walked up behind him as he was making coffee and asked him if he had ever been shot. Although Hebert did not see a gun, he testified that the robber had his hand under his shirt and poked him in the side with what he believed was a gun. The man then ordered Hebert to the register and demanded the money. Hebert gave him the contents of the register that totaled approximately $18.00. Defendant also took a pack of cigarettes and ordered Hebert to lie down on the floor. Hebert identified the defendant in a photographic lineup and made an in-court identification of defendant. In conjunction with Hebert's testimony, a videotape of the robbery was played for the jury.
Detective Brian McGregor testified that on April 16, 2001 he presented a photographic lineup to Dennis Hebert. Hebert identified the defendant as the person who robbed him.
Sergeant Joseph Picone of the Jefferson Parish Sheriff's Office testified that he obtained a search warrant to search defendant's vehicle. As a result of the search, a pair of blue jeans, a baseball cap, a Coke bottle, a French Vanilla Crème Soda, and a plastic gun were found in the vehicle. Those items were introduced into evidence at trial. The clothing and hat were identified by several of the victims as being worn by defendant during the robberies.
Detective John Carroll testified that he interviewed defendant concerning the robberies. Detective Carroll testified that he advised defendant of his constitutional rights and defendant signed a waiver of those rights. Afterwards, defendant gave a statement to Detective Carroll that was recorded and played for the jury at trial. *153 In the statement, defendant indicated his involvement in seven of the eight robberies. The only robbery for which defendant did not give a statement concerned the robbery of Dennis Hebert at the E-Z Serve located at 2525 West Metairie.
At the conclusion of trial, the defendant was found guilty as charged on all counts. After being adjudicated a multiple offender, he was sentenced to life in prison plus an additional 40 years on each count to run consecutively. He has appealed claiming the sentence imposed is excessive.

DISCUSSION:
On appeal, defendant contends that, while he was properly sentenced under the pre-amendment version of LSA-R.S. 15:529.1 to life imprisonment,[1] the trial court should have considered whether the ameliorative changes to the habitual offender statute merited a Dorthey departure from a sentence of life imprisonment.[2]
A review of the record indicates that defendant did not request a Dorthey departure during his sentencing as a third felony offender. Furthermore, while defendant did orally object to his sentence as being excessive, he failed to file a Motion to Reconsider Sentence as required by LSA-C.Cr.P. art. 881. The failure to file a Motion to Reconsider Sentence or to state the specific grounds on which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, writ denied by State v. Patterson, 99-3217 (La.4/20/00), 760 So.2d 342. Accordingly, we will review the sentence for constitutional excessiveness.
The United States and Louisiana Constitutions both prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). When a trial court determines that the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment," or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d at 1280; State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 383. However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 226. In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." State v. Harbor, 817 So.2d at 227.
When evaluating whether the defendant has met his burden, the trial court *154 must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Further, if the trial court finds clear and convincing evidence that justifies reducing the mandatory minimum sentence, the court cannot impose whatever sentence it may feel is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive. Johnson emphasized that a downward departure from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in "rare situations." State v. Johnson, 709 So.2d at 677.
In the instant case, defendant for the first time on appeal argues that the trial court erred in failing to execute a Dorthey departure in this case where the underlying offense involved the use of a toy gun and no injuries were inflicted upon the victims. However, the defendant has not demonstrated any exceptional circumstances to justify a downward departure from the mandatory minimum sentence. At his enhanced sentencing, defendant failed to present any evidence or make any argument regarding a downward departure from the mandatory minimum sentence. Thus, we find that defendant has failed to carry his burden under Johnson, Accordingly, we find that defendant's life sentence is not excessive[3]. See, State v. Harris, 02-873 (La.App. 5 Cir. 1/28/03), 839 So.2d 291.
Defendant also requested that the record be reviewed for errors patent. The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975). The review reveals an error patent in this case.
The record does not indicate that the trial court advised defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. Accordingly, this matter is remanded to the trial court and the trial court ordered to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. State v. Ware, 01-194 (La.App. 5 Cir. 8/28/01), 795 So.2d 495.

CONCLUSION:
For the foregoing reasons, the defendant's sentence is affirmed. This matter is remanded to the trial court for the limited purpose of informing the defendant of the provisions of C.Cr.P. art. 930.8.
AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defendant correctly cites State v. Harris, 02-873 (La.App. 5 Cir. 1/28/03), 839 So.2d 291, 2003 and State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, noting that this Court has held that the pre-amendment version of LSA-R.S. 15:529.1 applies when the underlying offense is committed before the effective date of Act 403's effective date.
[2] Defendant does not appear to challenge his sentences on counts two through eight as being excessive nor does he brief the matter.
[3] Defendant has not appealed his consecutive sentences on the remaining seven counts of robbery.